J. H. TOWNSEND ET ALS. v. McLEAN CONSTRUCTION COMPANY ET ALS.

(Filed 11 September, 1912.)

1. Navigable Waters—Bridges—Construction—Open Spaces—Passing Vessels—Obstructions—Negligence.

While constructing a bridge over navigable waters, in this case across Albemarle Sound, under the authority of the State and War Department, it is the duty of the builder to have open space sufficient to enable passing vessels to go through, and to keep those spaces free from all obstructions that would endanger them.

2. Same—Questions for Jury.

When the evidence tends to show that the builder of a bridge across navigable waters had left an opening for the passage of vessels, and that the plaintiff's vessel was injured while attempt-

ing to pass through this opening by coming in contact with a raft of piling material swinging out into the opening, and which had been fastened by a rope to the side of the bridge, it is sufficient, in an action for damages to the vessel, to be submitted to the jury upon the question of defendant's negligence. *Whitehurst v. R. R.,* 156 N. C., 48, cited and distinguished.

### 3. Evidence—Nautical Terms—Explanation.

It is competent for witnesses to testify to the meaning of certain lights and what such lights are intended to communicate in nautical terms to vessels passing on navigable waters when it is material and relevant to the inquiry; though the meaning is fixed by rules and regulations of the National Government, it is not ordinarily known to the jurors.

APPEAL by defendant from *Bragaw, J.,* at June Special Term, 1912, of PASQUOTANK.

Civil action.

The following issues were submitted to the jury:

First. Was plaintiff's vessel injured by the negligence of the defendants, as alleged? Answer: Yes.

Second. Did the plaintiffs by their own negligence contribute to their injury? Answer: No.

Third. What damage, if any, have plaintiffs sustained? Answer: $500.

Fourth. Was the property of R. S. Neal injured by the negligence of plaintiff Townsend, as alleged in answer? Answer: ..........

Fifth. What damage has defendant R. S. Neal sustained thereby? Answer: ..........

*Thomas J. Markham and E. F. Aydlett for plaintiffs.*
*Bond & Bond and Pruden & Pruden for defendants.*

BROWN, J. This action is brought to recover damages against the defendant construction company for an injury to the defendants' vessel, a three-masted schooner called the "Edna A. Pogue," while attempting to pass through an opening in the bridge across Albemarle Sound, en route from Elizabeth City to Plymouth for a cargo.

There are several assignments of error contained in the record, but we deem it unnecessary to consider more than one

or two. The defendants request the court to instruct the jury that if they believe the evidence they should answer the first issue "No." This prayer for instruction, we think, was properly refused.

At the time of the injury to the "Edna Pogue," the defendant company was engaged in constructing a bridge across Albemarle Sound for the Norfolk Southern Railway Company. While they had the right to construct this bridge under the authority of the State, as well as the War Department, it was the duty of the defendants to leave' open a space sufficient to enable passing vessels to go through. This the evidence shows that the defendants' agents in charge of the work undertook to do.

The evidence shows that on 12 December the "Pogue" sailed up to within three-quarters of a mile of the bridge and anchored to wait for a favorable breeze. It is common knowledge to all who are familiar with sailing craft that it is impracticable to "beat them" against a head-wind through an opening in a bridge.

The evidence shows that at half-past 2 o'clock on the following morning, the wind having arisen, the ' captain weighed anchor and got under way up the sound. The evidence shows that at the time that the regular drawbridges intended for the passage of vessels, one on one side of the sound and one on the other, had not been completed and were not in use for the passage of vessels.

The evidence further shows that the open space through which the master of the "Pogue" attempted to sail her was in use with the knowledge and permission of the defendants' agents for the passage of craft going up and down the sound.

The captain testifies that he saw a large tugboat with large raft, and a number of other vessels, passing through this same opening, and that there was a light put there for the purpose of indicating that it was intended to be used for the passage of vessels.

In attempting to make the passage through the bridge, the vessel came in contact with a raft of piling material which had been tied by the constructors of the bridge to the east side of it,

and to the south side of the gap, by a rope made fast to one end of the raft of piling, leaving the other end of the raft loose, so that it had swung around into the opening and the vessel had come in contact with it, causing her to lose her headway, whereby she fell off to the leeward, and her rigging became entangled with the pile-driver, which had been left on the north end of this opening, and the vessel was very greatly injured. The evidence shows that the wind increased very much at the time, so that the captain was unable to free his vessel and get her away from the bridge, and a large sea making up in the morning, she was badly chafed before she could get away.

The testimony of one of the witnesses, who was an employee of the defendants at the time, was to the effect that this gap or opening was being used by all the craft going up and down the sound while the drawbridges were being completed.

It scarcely needs the citation of authority to prove that, although the right to build this bridge cannot be gainsaid, it was nevertheless the duty of the constructors to do the work in a safe and careful manner; to leave open during the constructive period spaces amply sufficient for the safe passage of vessels navigating the waters of Albemarle Sound; and to keep those spaces free from all obstructions that would endanger the passage of vessels through such spaces.

There are numbers of cases which support the contention of the plaintiffs in this case. *Jutte v. Bridge Co.,* 21 Ohio C. R., 422; *Maxon v. R. R.,* 122 Fed., 555; *Kelly Line Co. v. Cleveland,* 144 Fed. In this case it is said that a company constructing a bridge is liable for injury resulting from its negligence when a vessel collides with the partly constructed bridge, or with works used in the construction when such collision could have been avoided by reasonable precaution upon the part of the constructors. See, also, 29 Cyc., 214. *Jutte v. Keystone Bridge Co.,* 146 Pa. State Reports, 400; *Casement v. Brown,* 148 U. S., 615; *Wilson v. Chicago,* 42 F., 506.

At a prior term of this Court we considered the case *Whitehurst v. R. R.,* 156 N. C., 48. We think it has no bearing whatever upon this controversy. There was no evidence of

negligence whatever upon the part of the defendant in that case, as it was perfectly manifest that the vessel was lost before she ever reached the bridge by failing to respond to her helm at a critical moment.

The defendants except because the court permitted witnesses to testify to the meaning of certain lights and what such lights are intended to communicate in nautical terms. It is true that these are fixed by the rules and regulations of the National Government, but they are not known to jurors, but only to navigators and persons familiar with nautical regulations.

It was entirely competent to prove by witnesses the meaning of such terms and what certain kinds of lights were intended to indicate.

We have examined the charge of the judge, and deem it unnecessary to comment upon the exceptions relating to that. The charge was eminently clear and fair, and presented the matter to the jury fully and completely, with conspicuous impartiality.

Upon a review of the whole record, we find

No error.

The motion to nonsuit is covered by the ruling on the prayer for instruction, and is therefore overruled.